So let's proceed with that understanding, and let's hear counsel in Diuffre v. Brown, 20-2413-CV. Good afternoon, Your Honors. This is Adam Mueller, and I represent Ms. Maxwell. I wanted to start this afternoon by talking about the scope of this appeal and what is at issue and what is not at issue. Given this court's involvement with the first appeal, well, this appeal is much narrower than the first appeal. We're talking about hundreds of pages, not thousands of pages. And for our part, we have deliberately tailored and circumspect in our approach to this appeal. So in the order that's on appeal from Judge Preska, we actually consented to the unseeming of significant material in the district court. And of the material that Judge Preska ordered unsealed over our objection, we're only appealing a fraction of that. And so I think that context really sets the stage for the narrowness of this appeal. Despite its narrowness, it's extremely important because what we're talking about is most prominently the entire 418-page transcript of my client's April 2016 deposition. Now, that transcript was attached by the plaintiff, Ms. Diuffre, to a routine discovery motion. Judge Preska, in this case, ordered without any redactions or any line-by-line consideration or any page-by-page consideration or factual findings, Judge Preska ordered that entire deposition released to the public. We think this court should rule and can rule as a matter of law that the deposition material should not be released. The first point I want to make is about the presumption of access that applies here. We don't dispute that this is a judicial document as defined by the court under its cases and most recently in Brown. But the presumption of access that attaches is much more limited than the presumption of access that attaches to summary judgment material. I think this court said exactly that in the Brown decision when it discussed the strong presumption of access that attaches to summary judgment material. And this court ruled, in fact, as a matter of law that the summary judgment material and its incorporated exhibits were judicial documents with a strong presumption of access. It distinguished the summary judgment material from everything else at issue in that case, which now includes this deposition material here. And so I say that at the outset because I want to put this all in context of what presumption attaches. And that presumption is much lower in our view under this court's decision in Brown, little more than a, quote, prediction of access. Because, frankly, there's no justification for attaching an entire 418-page deposition transcript to a routine discovery motion. And that discovery motion is even more routine than others, perhaps, because it was not about substance. It was about procedure. It wasn't about what material should or should not be subject to discovery. It was about how many depositions were going to be taken. And there's just no justification for attaching the entire deposition transcript to that motion. If this court looks at the summary judgment briefing where substance is very much at issue, there were excerpts of deposition material attached. If this court looks at the motion to compel Ms. Maxwell to answer questions in her second deposition, the July deposition, plaintiff attached or excerpted from the deposition, did not attach the entire deposition. When the parties were preparing for a trial that, of course, never happened and were designating deposition material for use at trial, the parties did not attach an entire deposition. They attached excerpts. And so I still don't understand why it was necessary or proper to attach an entire transcript to the motion to exceed the presumptive 10 deposition limit. So the presumption of access that attaches here is much lower than the summary judgment material. And ordinarily, the deposition would just be passed between the parties and would never even be filed with the court, so it wouldn't even be subject to a judicial document analysis. So with that context in place about what presumption of access applies, the evidence is clear as a matter of law that Ms. Maxwell reasonably relied on the protective order and Judge Prescott erred in ordering its release. First, Judge Prescott did not even address reliance when she ordered the deposition released. If this court looks at Appendix 836 through 49, the court can review the transcript of Judge Prescott's order. The word rely or any of its variations just doesn't come up. So Judge Prescott never addressed it. And we know what Judge Prescott, when she does address reliance, she does so expressly. And we've given two examples. The first is at Appendix 525, and the second is Exhibit A to our reply brief. And in those cases, in those examples, the court addressed motions by Professor Dershowitz to modify the protective order. And in both cases, the district court expressly addressed reliance, particularly by third parties, and denied or denied in part those motions to modify. And no one has explained, at least of all the district courts, in our review, why the reliance of third parties with Ms. Maxwell's reliance was not. And here the record is clear that it, in fact, was reasonable reliance in the protective order. We have, from the very beginning of the case, a demand on our part from a protective order. And ultimately, Plaintiff's agrees to our protective order at the March 17, 2016 hearing and agrees to that protective order so the deposition can happen. And the quote from that hearing from Plaintiff's counsel, and this is at Supplemental Appendix page 9, was, I can have the deposition of the defendant in this case and move this case forward. I will agree to their protective order and adjust upon the deposition. It is that important to me. And in the transcript of the April 21 hearing, 2016, which is the day before the deposition at issue, Judge Sweet denied the Pro Hoc Vice motions of two of Ms. Dufresne's lawyers and prohibited them from having access to confidential material. And what that meant was, at the deposition the very next day, at page 6 of the deposition, one of Ms. Dufresne's attorneys had to leave the room for the deposition because it was going to be confidential and sealed under the protective order. So if you put yourself in Ms. Maxwell's position, there really isn't a question about whether she reasonably relied on the protective order in this case. At the hearing on the motion to compel, which happened in between the two depositions, again, we have Ms. Dufresne's attorney saying, we have a protective order in place that assures Ms. Maxwell's right to privacy in answering these questions. So all the record evidence is that she reasonably relied on the protective order. And frankly, there's no evidence that that reliance was unreasonable. And this court, in the Brown decision, has already found reasonable reliance. At footnote 22, this court explained that it was redacting certain material from the summary judgment filings. There, there was reasonable reliance on the protective order. Now, the presumption of access that attaches to summary judgment material is higher than the presumption of access at issue here. And if reasonable reliance existed as to the summary judgment material, then surely it existed as to this material, which in our view, frankly, should have never been filed with the district court. But be that as it may, it's subject to nothing really more than a prediction of access. Excuse me, you have one minute left. Thank you. I think the briefs addressed why my opponent's arguments about reliance don't half-muster. The main one seems to be that this was a temporary protective order. But I think that's really nonresponsive for three ways, because all protective orders are temporary. If you go to trial, it's a public trial that people are going to attend. So the fact that this didn't apply at trial doesn't really matter. In addition, of course, this case did not go to trial. So I actually think that cuts the other way, because the fact that it did not go to trial means that the reliance by Ms. Maxwell was even stronger. And finally, even if it had gone to trial, we have no idea what evidence would have come out. So I don't think the fact that this was not a quote-unquote permanent protective order really bears much on question. And with that, I'm willing to take the court's questions, and I'd like to reserve what time I have left for rebuttal. That's fine. Thank you very much, counsel. Judge Pooler? Yes. You say that the district court did not deal with the reliance interest. Didn't she say we have considered every argument and find them not to be of merit? I don't think that's exactly what she said, Your Honor. I think she said that the court has considered – she said that Ms. Maxwell had identified various countervailing interests, and then she identified three or four of those, and none of which was reliance. And then she said, of the identified interests, I have rejected those. So I don't think even implicitly she addressed reliance. And that's particularly true when you contrast it with what the district court does when she – when the court does address reliance on the merits. And I point this court to the two orders relating to Professor Dershowitz's motions to modify the protective order, and there we have extensive discussion about reliance, and we've got nothing of the sort here. But in addition – I'm sorry, Your Honor. Do you concede that these are judicial documents? Oh, good. You did. Because I'm not sure that you did in your brief. We certainly intended to, Your Honor. I don't dispute that these are judicial documents subject to a presumption of access. Our view is that it's basically the lowest presumption that can apply, and we think that's consistent with what this court said in Brown, that it's little more than a prediction of access because this really – the filing was, frankly, irrelevant to the relief requested in the motion. If I could just go back to the reliance question and the district court's ruling on it, there's another point I'd like to make, which is that even if the court implicitly rejected our argument about reliance, simply saying Ms. Maxwell identified reliance in the counts for daily interests, I reject that assertion of reliance. That's not good enough. That's just – there's no explanation there for why the reliance isn't reasonable. And to facilitate this court's appellate review, we need something more than that. And so even if the court had said the word reliance, which the district court did not say, that wouldn't have been good enough in our view. There needs to be some reasoned explanation to why the reliance on the protective order wasn't reasonable, and we still don't have that as to Ms. Maxwell. And, in fact, at the third parties, we have multiple examples where the court says reliance was reasonable. So I don't understand the distinction between the third parties and Ms. Maxwell, particularly Ms. Maxwell negotiated the protective order. I'm sorry, Your Honor. Ms. MacKenzie, isn't the presumption in favor of access and reliance has to be raised as a dissent to the presumption of access? Well, I think that's a fair characterization of the analytic framework in that the presumption applies, and there are countervailing interests that the court should consider. Correct. And the district court did that analysis, didn't it? I do not agree that the district court did that analysis as to reliance. I think the record is clear. The district court did not consider reliance as a countervailing factor. And even if it had implicitly considered reliance as a countervailing factor, it didn't offer any reason, explanation for why the reliance wasn't reasonable or why reliance did not, wasn't sufficient to outweigh what we think is a limited presumption of access in this case. Thank you, counsel. Thank you, Your Honor. Judge Rodgers. Yes, I have a few questions. Counsel, as far as you spoke about there being no reason to attach these documents to the motion, did Judge Prescott address that question about whether it was reasonable to attach these documents? She did those weekly, Your Honor. She acknowledged the fact that I think her words were that technically some of these filings may not have technically been required. I'm sorry, you got a little garbled there, counsel. I didn't understand you. Could you do it again? Yes, I apologize. Judge Prescott said that some of the filings technically may not have been required. I'm paraphrasing loosely, but I think it technically may not have been required. It's pretty close to what she said. So I think she acknowledged that some of these filings were not necessary or proper and certainly did not read. I thought the issue, though, in the motion was whether or not more discovery was warranted. And the argument that was made to the court was take a look at the kind of answers that Ms. Maxwell was giving in her initial deposition. And according to Ms. Jiffers' counsel, that showed that there was a need to compel her to answer more precisely. Did I misunderstand that that was the entire thrust of the motion? There are two motions filed by Ms. Jiffers' attorneys. The first was the motion to exceed the presumptive 10 deposition limit, and that's the motion to which the entire deposition of Ms. Maxwell was attached. And then there was a separate motion to compel Ms. Maxwell to answer questions. And that motion, Ms. Jiffers' attorneys, in our view, appropriately excerpted the deposition and did not attach the whole thing. So the first motion to which the deposition transcript was attached was a motion to exceed the presumptive 10 deposition limit. And, again, I think that argument can easily be made on a procedural level without all 418 pages of deposition. I'd be interested to hear what your adversary has to say about that characterization of the motion practice. But I have one other question to ask you. It seeks clarification of what I think was the response you gave to Judge Pooler. I thought I wrote down, as you were making your main argument, that you did not dispute that this was judicial material. Did I take that down wrong? No, you didn't, Your Honor. We don't dispute that these are judicial documents subject to a presumption of access. We do not dispute that. All right, because it was a little unclear to me whether you were taking a different position in one of your responses to Judge Pooler. So, what does – your position on the presumption, again, as I was taking notes from your main argument, I thought, was that a presumption applies, you just think it's one that's weaker than applies to summary judgment materials. Is that right? That's right. So, you're not denying that there is a presumption of access here, just that it shouldn't be given the same weight as one that would apply if these were summary judgment materials. That's exactly right, Your Honor. Okay, thank you. Thank you, Judge Cabranes. Thank you, counsel. I have just a couple of quick questions to make sure I understand your responses to Judge Roderick. Doe 1 and Doe 2, let's turn to them for a moment. They were given notice of the motion to unseal and the opportunity to object to the unsealing. Is that right? They were given notice, Your Honor. And neither of them lodged any objections. Is that right? Your Honor, that's correct. Bear with us a moment. Somebody is grinding. Who knows? Grinding coffee, perhaps. It's not me, Your Honor. I drank a lot of coffee this morning. Yeah. Whoever is grinding presumably has now stopped and should not resume grinding. Okay, now where were we? We were discussing Does 1 and 2. Neither of them lodged any objections. Your Honor, if I could actually correct that. Since the briefing on this case was filed and the appeal was filed, Doe 1 and Doe 2 have since objected. That's not in the record before this court because it's happened since the case was on appeal. But there have been objections lodged by Doe 1 and Doe 2. I see. Is there something that we should know about those objections? Although we understand from what you say that they're not in the record, but is there something that we can be informed of? Yes, Your Honor. They've objected to their names being used, as I understand the objections. And they're getting excerpts to further evaluate whether further objections are appropriate. And let me go on. It was possible, was it not, to challenge the designation of materials as confidential under the protective order? It was possible, Your Honor, and no objections ever occurred. And it was possible, in turn, to use materials covered by the protective order at trial. Is that right? Absolutely, Your Honor. The protective order, by its terms, did not apply to material produced or evidence produced at trial. Yeah, subject, of course, to evidentiary objections, irrelevant, et cetera. Let me turn to the unsealing of the deposition materials. Is it your argument that unsealing would implicate your client's Fifth Amendment rights? It is, right? It is, Your Honor. That is the argument? Yes. Now, during the deposition itself, there was no invocation of those rights, was there? There was no invocation of the Fifth Amendment rights because we understood the protective order applied, and we understood this court's decision in Martindale provided extra protection as well. Had we known differently, understood differently, we would have proceeded differently. Right. Now, your privacy interests, I gather you claim they would be implicated by the unsealing of these materials, right? Yes, sir, we do. But you refuse to answer any questions about consensual sexual activities involving adults. Isn't that accurate? Some of the questions we declined to answer, but there were questions and answers given, and I pointed to the court some of these. The court looks, for example, at appendix pages, page 1509. There's affirmative testimony about intimate matters. And I would also say, Your Honor, as you pointed out in the brief, there are cases where our client answers no to questions asking for intimate information, and a denial of having engaged in certain intimate conduct is as revealing of intimate behavior as is an admission to doing that conduct. And I also think to the extent there was either I don't remember answers or I'm not going to answer or no negative answers, the questions themselves, these weren't open-ended questions, Your Honor. These were leading questions that presuppose an answer and presuppose an evidentiary basis for the answer. And so the questions themselves are problematic irrespective of the answer. And so we actually – the court looked at the first substantive question of the deposition. It is akin to a when did you stop beating your wife type question. And there are lots of examples of that throughout the deposition, both incriminatory and about privacy matters, that even if you take the answer out of the equation are problematic and we say revealing of private or sensitive or confidential information. How so? Well, as I said, Your Honor, to the extent my client answers the question no, the question is have you engaged in a certain type of intimate conduct? And my client says no, I haven't. That's revealing of a private matter. Not having engaged in conduct – a certain conduct implies maybe that you've engaged in other conduct or – and certainly why you didn't then do that, which is a private matter. And even if the question is a leading question to which no answer is given, it certainly implies that the other side has an evidentiary basis to ask the question. And so the question in and of itself implies an answer. As all leading questions do. Well, let me ask you, is it fair to say your client did not deny knowledge of any activity involving underage minors? Or did she? What's your view of this? Did she or did she not deny knowledge of any activity involving underage minors? Your Honor, I'm hesitant to answer the question only because at the moment the definition is sealed. I've been trying to speak a bit in generalities to avoid revealing something that I think is, for the moment, we can spend longer than the moment, sealed. I'm not trying to avoid answering the question, but I'm hesitant to offer an answer. If the court wants me to, I of course will. No, no, I understand. I appreciate your circumspection. Let me ask Judge Poole whether she has any additional questions. I do not. Thank you, Judge. Judge Raji? No, thank you. All right. Thank you. Well, thank you, counsel, very much. We'll hear from you on reply. But in the meantime, we'll hear from counsel for the APLE, Virginia Dufresne. Judge Raji? Good afternoon, Your Honor. May it please the court. My name is David Boies, and I represent the plaintiff, Virginia Dufresne. Let me, at the outset, try to clarify a couple of factual background issues. First, the court inquired as to whether there had been objections by Doe 1 and 2. I believe counsel was clear, but I want to be certain. That is that the objections that were lodged were solely related to the use of the name. They did not object to the release of the transcripts of the depositions. They simply wanted their names removed. The second background question that I'd like to address is when this court decided the case before it earlier and sent it back to the district court, this court was very clear that the burden of the party seeking to avoid the presumption of access to a judicial document had to provide specific objections to specific portions of the documentation. Ms. Maxwell has not done that, neither in the district court nor to this court. Does Ms. Maxwell attempt to go through, as counsel said earlier, page-by-page or line-by-line and demonstrate what the interest is and why that interest outweighs the presumption of access? Counsel criticized the district court for not doing a page-by-page or line-by-line analysis. The reason the district court did not do a page-by-page or line-by-line analysis is because the burden was on Ms. Maxwell to attempt to identify page-by-page and line-by-line specifically what it was that was being objected to and what the basis of that objection was. Ms. Maxwell failed to do that. Let me now turn to the analytical framework. As this court held in the 2001 decision of SEC versus the street.com, where there is an attempt to modify a protective order, the first issue is whether or not it is a judicial document, a judicial record. And then second, to analyze whether or not, even if it is not, the public ought to have access to it. The court, of course, will recall that in that decision, the street.com, this court held that although the document there was not a judicial record, there was no reasonable expectation of privacy as a result of the protective order. And the court was very clear, and this is at page 231 of 273F3 in the official report. The court says that, for instance, protective orders that are on their face temporary or limited may not justify reliance by the parties. Indeed, in such circumstances, reliance may be unreasonable. The court went on then to discuss the Agent Orange case and make explicit what it was talking about. And the court says in Agent Orange, we held that appellants could not have relied on the permanence of the protective order. By its very terms, the order was applicable only to the pretrial stages of litigation and would be reconsidered upon commencement of the trial. Now, in this case, the protective order is even weaker than the court description of the protective order in Agent Orange. Because in this case, the protective order makes clear that it does not apply to trials. Not merely it's going to be reconsidered, it does not apply. So that any reliance here would be inconsistent with the terms of the protective order. In addition to that, the protective order merely kept something confidential until the court could rule on any objections that were made. And at the time that the court ruled, the party seeking confidentiality bore the burden of establishing that it was entitled to confidential treatment. The protective order gave no presumption that the information sought to be protected would be accorded confidential treatment. All it did was allow things to be produced, testimony to be given, and then somebody could object to a confidentiality provision. And it simply kept everything confidential until the court could rule. And when the court considered it, the burden was on the party seeking confidentiality. Now, what that means is that when Ms. Maxwell testified, she had no expectation of privacy because the protective order gave her no presumption of protection at all. It is even weaker, again, than the protective order that the court held in Agent Orange did not justify reliance. And there was no time limit as to when an objection could be made. There was no limit on who could make those objections. So there simply was not any reasonable reliance. And if that is so, that ought to be the end of the inquiry, particularly in the absence of any specific objections lodged by Ms. Maxwell. And that would be the case even if this were not a judicial argument. But of course, as counsel has now conceded, it is a judicial document. And counsel tries to say, well, it's a judicial document, but there's not a significant presumption. That's not what this court held in the Brown decision earlier. But what this court said explicitly is that while there was a it said, while discovery motions and other dispositive motions are subject to a lesser but still substantial presumption of public access. This court did say discovery motions were subject to a less strong presumption, but it was still a substantial, substantial presumption of public access. Let me just address the argument that's made that says this was not attached necessarily to the motion. I think counsel said it was basically irrelevant. You have one minute left. Thank you. That is not accurate. The whole purpose of this motion was to demonstrate that we needed additional depositions beyond the 10. And to do that, we had to show the judge why the depositions that had been taken were not adequate. And to do that, the court needed to look at the entire deposition in context. So that I think that it was properly and the court found that it had been properly attached. Thank you. Thank you, Mr. Boies. Judge Poole, do you have any questions for Mr. Boies? I do. Thank you, Judge Cabranes. Mr. Boies, your client, pronounce her last name for me, would you? It's Jufre. Jufre. Your client, Ms. Jufre, won the case, settled this case with Ms. Maxwell, correct? Yes, Your Honor. And Ms. Maxwell said she was a liar and this is a defamation action, correct? Yes, Your Honor. But she doesn't have any real interest in making this public. What is her interest in making it public? Why does she care about it? I think she cares about it, Your Honor, because and I will say that I think the media's right to access here is probably a stronger claim than ours. Well, we'll get to that in a moment. But one of the things that is particularly important to my client is that there not be selective unsealing. The way this originally came up is there was an attempt to unseal portions of the record. And what we have argued from the beginning is that it is unfair to our client that only selected portions be unsealed so that the people who are looking at it don't have the entire context of what some of the parties who have intervened and made motions for partial unsealing have argued for is to release this letter or this document or this portion of the testimony. And we think it would be very prejudicial to our client. I don't understand why, counsel. I don't understand why it would prejudice her in any way in her private action for defamation against Ms. Maxwell, whether this was public or not. Your Honor, I think you're right. It doesn't prejudice her in that action because that action has been completed. However, what it does do is it prejudices her in terms of the public. If the public gets a misleading view of what the evidence was, it would be one thing if there was no unsealing at all. But the public doesn't have a voice in any of this. The defamation action was settled, correct? The defamation action was settled. I don't understand. Is there a reason at all for continuing in this case? Well, what's continuing in this case is the protective order. And with respect to the protective order, I think my client has a legitimate interest in saying that if certain portions of the sealed record are going to be made public, that the entire subject to the kind of limitations and redactions that the court in Brown ordered. But subject to those limitations, that the entire record be revealed so that there is not misleading impression, not misleading information. Misleading who counsel? There's no more lawsuit. Who would be misled? Well, everybody who's getting this information. If the fact that there was no more lawsuit was sufficient, then nothing would be released. And what I'm urging the court to consider is that once you decide that you're going to release certain information, then my client clearly has an interest in making sure that the information that is released is fair and in context. And this is not a situation in which it's either everything or nothing. If it were everything or nothing, then my client's interest would be more attenuated. But if some of it is going to be released and some of the stuff that has been cherry picked to try to... And people have already started to use. I don't know whether it's part of this record or not, but the court can certainly take judicial notice of the fact that there have been a number of public statements in which people have tried to say, we're going to release certain things out of context here. We're going to release some of the documents and some of the documents are going to show that my client was not truthful or my client made things up. And the entire record in context is quite clear that my client did not make things up, that my client was telling the truth. That's why we were successful in the litigation. What I'm asking you really is whether she has a legally protectable interest that we're ignoring. And I don't see what it is. The right not to be held in public obliquely, sure. The right not to be humiliated, sure. But those are not rights that you can bring to us and say we have to release the whole transcript. Well, Your Honor, I would respectfully suggest that if the court is going to release certain documents covered by the protective order, that my client does have a legally cognizable interest. Tell me what that is. Explain what that legally cognizable interest is. It is the same interest that justifies any release of information. If you're going to release some information, we have an interest in having that information released in context. We have an interest in making sure that, as this court held in Brown, it's very possible for records from a judicial proceeding to be misleadingly interpreted by media and the public. And what we're saying is that there was a protective order here that covered all of the material. And if what's going to happen is some of that material is going to be released, then all of the material that is a judicial record and it meets the other criteria ought to be released at the same time. Counsel, I'm not going to pursue this much more. But what you've just said does not describe for me a legally cognizable interest. Sure, she doesn't want to use the records. Sure, she wants the whole thing out, not part of it. But what is the legally cognizable interest under which she's claiming protection? I apologize, Your Honor. I'm not sure that I can do much more than to say that I think that a party to litigation where there's been a protective order... But there's no more litigation. We've discussed that. There's no more litigation, is there? No, I understand that. But what I'm saying is a party to litigation where there's been a protective order in making sure that if that protective order is modified, that it's modified in an even-handed way. All right, thank you. Thank you very much. Yes, thank you. Judge Rodgers? Yes. Let me ask you, during your argument, I think I heard you say a number of times that Ms. Maxwell had no expectation of privacy with respect to this material almost from the start. Is that the point you were urging us to embrace? Yes, Your Honor. All right. What I'm not certain of is then what is the purpose of these parties entering into a protective order if it affords no protection? It was because what it did was it preserved the confidentiality until the court could rule on whether something was or was not to be protected. My understanding is that that would require some showing. It wouldn't necessarily mean that there would be disclosure. The parties have entered into a protective order. There'd have to be some showing as to why the protective order would not bind. Wouldn't there? No, Your Honor. The protective order was exactly the opposite. The protective order provided explicitly that the burden, if there was a challenge, that the burden was on the parties seeking confidentiality. I saw that provision. I saw that provision. But still, someone would have to make a showing. Do you think it would be adequate for anybody to just knock on the court's door and say, we'd like access to this material? Yes, Your Honor. I think that is exactly what the protective order says, that any party at any time can object to the designation of confidentiality. A party. We're not talking about a party here, right? We're talking about a third party. Right. Do you think that the agreement between the parties contemplated third parties or only between the two of them? I think it included any intervener, anybody who became a party or anybody who had standing to raise an objection. What does one gain from the protective order then? I'm sorry not to be understanding it. I would think that would be the situation even if they'd never entered into a protective order. Accept the following, Your Honor. Please. Take the deposition of Maxwell. When Maxwell gives her testimony, if there's no protective order in place, that testimony can be immediately disseminated. That is, there's no chance for it to be protected. I see. So your client could not just have released it the day she obtained transcript copy. Exactly right, because it'd been designated confidential. As a result, if we wanted to disseminate it, we would have to object and it would go to the court and it would be kept confidential until the court ruled. Okay. It protects her in that sense. But it makes clear that when there is such an objection, the burden is on the person seeking confidentiality. And of course, the order is also explicit that it does not apply to trial. And as this court held in the street.com case and in the Agent Orange case, that itself was enough to mean that there was no justifiable violence. Okay. Now, one other question. You explained the argument you also developed in your papers about why you gave the district court the entire deposition in support of your motions because you needed to show why you wanted to ask Ms. Maxwell further questions. But your adversary, if I understood him correctly, said that you didn't attach the deposition to that motion. You attached it to the motion seeking more than 10 depositions. Is that an accurate statement of how it all played out? And if so, how does that support your argument? We made a motion to exceed the 10 limit. Yes. And that motion was what we attached the entire deposition transcript to because for that motion to succeed, we had to convince the judge that we had not had an adequate amount of discovery. And for that purpose, the entire deposition transcript was relevant. The second motion that we made was to compel her to answer certain questions and with respect to that motion, what was relevant was the particular excerpts that set forth the questions that we wanted to have answered. In addition, I believe the motion for 10 came first. So the court, I think, already has the entire transcript. But we had two different motions and each motion we attached what we thought was appropriate evidence that the court needed. To compel, the court needed to know what we were trying to compel to give us additional deposition. The court needed to know that the depositions that had been taken thus far did not adequately give us an opportunity for discovery. Okay, thank you. Thank you, Judge Kabates. Mr. Boies, let me retrace some of these things very briefly. What in your view is your interest here? That is, what decree would you ask us to enter which would achieve your objectives? I think what we would ask is that you affirm what the district court did. Because we believe that the district court was approaching this in the way that was consistent with what this court had directed the district court to do in Brown. So you're seeking the unsealing of the deposition materials in their entirety except, I guess, with respect to the names of Doe 1 and 2, is that right? Exactly, Your Honor. And what's the status of Doe 1 and 2 with respect to their interest in preventing the unsealing of names? I think that is right now before the district court. Okay. I think whether the court agrees to delete the names is currently before the district court and has not been decided. But that is all that they are seeking is the deletion of their names. Right, and so you and they have effectively waived  Yes, Your Honor. All right. Do my colleagues have any other further questions? Judge Pooler? No, thank you, Judge Cabranes. No, thank you. Okay, fine. Are we going to hear now from Miami Herald? How much time have they reserved? If any. Three minutes, I think. Yes, Your Honor. Three minutes, correct? Yes, Your Honor. Okay, good. I don't have it in my copy of the calendar. Fine, great. All right, let's hear from Miami Herald. Thank you, Your Honor. May it please the court, I'm Christine Wiles from Holland and Knight on behalf of Intervenors, Julie Brown and Miami Herald Media Company. As counsel Vermuthi Frey has made clear, the district court proceeded exactly as instructed by this court in Brown v. Maxwell. It conducted the individualized review of the sealed documents and made specific on-the-record findings that the documents at issue are judicial documents submitted as part of the party's arguments to the court in discovery motions that were ruled upon. Because these are judicial documents, the presumption of access applies. As discovery motions, the presumption of access is somewhat less weighty  but the district court concluded, consistent with this court's instruction in Brown, that there is a substantial presumption of public access. And the district court also concluded that there were no specific or substantial reasons that outweighed the presumption of access, including any of the countervailing interests identified by Ms. Maxwell. For all of these reasons and those stated by Ms. Julie Frey's counsel, we respectfully request that the court affirm the district court's decision to unseal the records at issue in this appeal. Ms. Maxwell's reliance argument is entirely misplaced. Protective orders govern the exchange of information in discovery, but the parties cannot by agreement override the presumption of access. Also, Ms. Maxwell's efforts to now claim that her criminal trial will be impacted by the release of these documents have no support in this court's precedent. As this court made clear in U.S. v. Graham and NBC v. Myers, threats to a defendant's right to a fair trial must go beyond mere speculation to overcome the presumption of public access. It is not required that there be an absence of media publicity for a defendant to have a fair trial. An enhanced public awareness of a case alone  to allow judicial records like those at issue in this appeal to be sealed. Finally... You have one minute left. Ms. Maxwell's arguments regarding privacy are too vague to be given any weight, especially in light of the public interest in this matter. Judge Presta examined Ms. Maxwell's arguments and concluded that all Ms. Maxwell has offered are vague, speculative, and conclusory allegations of potential harm. This is not enough to overcome the presumption of access, especially where the judicial documents at issue involve matters of the utmost public importance, accusations of sex trafficking of young girls for years at the hands of the wealthy and the powerful that have been kept secret for far too long. The district court's decision should be affirmed and the documents should be immediately unsealed. Thank you, counsel. Judge Pooler, any questions? Yes. So, Ms. Wallace, you're totally unpersuaded that Ms. Maxwell has the right to a jury pool in her criminal case that is unpolluted by this material. Correct? Yes, Your Honor. We do not believe that Ms. Maxwell's right to a fair trial is at all implicated by this and that there are other means that a district court can use in order to ensure that she be given a right to a fair trial. I'm very impressed with the work that Julie Brown and the Miami Herald have done in this case. In fact, they led to some important work in the protection of young female victims. But Ms. Maxwell may be a victim as well. Isn't that true? We do not believe that that is true. But again, whether Ms. Maxwell is a victim or not is irrelevant to whether the documents at issue should be released here. I have no further questions. Judge Rodger, any questions? We've just heard counsel for the original parties in the case debate whether these materials should or should not be viewed or should have ever become judicial documents, whether it was even necessary for them to be part of the motion practice in this case. What's your client's position on that as it may affect your application for unsealing of the documents? Once those documents were attached to a motion and the court considered that motion, the presumption of access applies. So your view is it's all up to Ms. Maxwell to demonstrate that the court erred in some way. Until that happens, your client is entitled to the materials. Is that basically your position? Yes. We believe there is a public right of access to the materials that attached when those documents were filed and the court ruled upon the motion. Unless there is a specific or substantial reason that would outweigh that presumption, none of which has been shown, the documents need to be unsealed. All right. Thank you. I have no further questions, Judge. Ms. Walsh, just a semi-clerical sort of question. You're the only intervener appearing on this appeal. Is that right? That is correct. Mr. Dershowitz and the other intervener in the original action are not before us. Is that right? I believe that Mr. Cernovich has joined in our appeal or in our filings in the appeal. Uh-huh. So he's an intervener with you? Not with us, but yes, he is also he has submitted a letter agreeing with our position. I see. And what do we know, if anything, about Professor Dershowitz's situation? Is his matter still pending? Are his concerns still before Judge Prescott, as far as you know? Mr. Dershowitz's concerns about access for discovery purposes? Right. I would defer to the original parties for the litigation to answer that question. Okay. So we'll hear from counsel for Maxwell. I'll reply now. And perhaps he can just bring us up to date as a clerical matter. Who's in, who's out? Who's before us now? Your Honor, this is Adam Mueller again from Ms. Maxwell. I believe I have about three minutes left. I want to start first with clarifying the status of the Doe 1 and Doe 2 proceedings on remand. Mr. Boyce mentioned and spoke about whether it was limited just to names. I don't think that's entirely correct. This court can look at docket entry 1125 on the district court docket. And what's happened now is Judge Prescott ruled that Does 1 and 2 have not had the opportunity to make a full analysis of whether they should object or not because they haven't been given all the excerpts that are issued. So those are now being provided to those 1 and 2. And under Judge Prescott's order, once those excerpts are received, they will have 14 days to make objections that can go beyond just their names. And we know, for example, that there are details about medical conditions. As one example, that would, we think, reveal identity. So it's not just about names. So that is outstanding on the district court docket. That's the first point. The court, Judge Cabrani, just asked about the the state of affairs with regards to Professor Dershowitz. There is still litigation ongoing in the district court and more objections to what can or cannot be turned over to him. So that is still pending as well. I wanted to turn to some of Mr. Boyce's points about reasonable reliance on the protective order. And Mr. Boyce talked particularly about the process for objecting to a confidential designation and the fact that the protective order didn't apply at trial. And really, I think two things need only be said. One, there was never an objection to confidential designation. And so the court never ruled on anything, whether it should be confidential or not. And therefore, Ms. Maxwell's reliance was eminently reasonable under the circumstances because once the designation is made, it is confidential unless and until there is an objection and then the court rules. And there was no objection in this case ever. Number two, there was never a trial. So the fact that the protective order would not apply at trial is simply irrelevant to the question. And in fact, helps us, I think, in establishing reasonable reliance. Another point is that Judge Sweet, in his order, which this court reviewed in round one. Thank you. Judge Sweet, in his order that this court reviewed in round, in the first appeal, recognized reasonable reliance by Ms. Maxwell and by multiple third parties. And noted as a factual matter that the settlement in this case was contingent on confidentiality, which echoes the confidentiality features of the protective order. And those factual findings were not disturbed by this court. And I think they carry the day. The final point I make is about fair trial. And I think the court need only look at the Miami Herald's response to our motion for a state pending appeal. To see what we're talking about in terms of media publicity and the potential for that to affect the ability of Ms. Maxwell, and for that matter, the government, to secure a fair trial. We want a fair trial to happen. We don't want to be in a case where there are multiple appeals and things are delayed. We are confident in our ability should there be a fair trial to defend Ms. Maxwell. And with that, I would turn it back to the court to see if there are any other questions. Thank you, counsel. Judge Pooler, any questions? No, thank you, Judge Cabrera. Judge Rajiv. Yes. I'm a little uncertain that I understand your fair trial argument in the context of your challenge to Judge Preska's ruling. It's been suggested that any concerns you might have on that front are appropriately dealt with when there's jury selection. And if there can't be a jury picked, then you have your argument. If there can, then there's no reason to be concerned here. Why should we be making assumptions about how your client will or will not be prejudiced at trial in reviewing this unsealing decision? I think a couple of reasons are, the first is if this court looks at Maxwell, or excuse me, at the Nixon case, this court will see that even after a trial, the Supreme Court was concerned about whether there would be an ability to secure yet another fair trial. And that's after everything's already been aired in the first trial. And so here, really, what we're just talking about is preserving the status quo. And the fair trial argument, of course, has to be balanced against the presumption of access, which we, again, can see applies. But we're talking about a limited presumption of access. And what we would contend is basically the minimal presumption of access. So in that context, we don't think that it's asking too much to simply preserve status quo. And of course, there's going to be a public criminal trial. And there will be, this will all be aired in open court. And the media will attend and report on that, and the public can observe and depending on COVID at the time, attend and report on it. And we think that vindicates the public's interest as well. Well, maybe I wasn't clear. I mean, I will assume for purposes of my question that even before your client's trial, there will be a fair amount of press interest in her and in her, in the events that lead up to her criminal prosecution. I nevertheless am not sure why, given that she will be the subject of considerable press attention, the question of whether to unseal this is a maintain the status quo question or whether it's the question that looks to the judges to decide how much prejudice risk do they see here? I mean, as I understand it, one or both judges suggested that your client did not give answers sufficient to raise any concerns along those lines. A couple of points in response, Your Honor. I think the fair trial point is not just about publicity. It is also about and this court has recognized it and the district court has recognized it when granting states of civil cases pending parallel criminal proceedings or the resolution of pending criminal proceedings is that there's a risk, a strong risk that witnesses and the testimony offered by witnesses will change as a result of the public disclosure of, for example, testimony, deposition testimony before trial. And we don't want a situation where witnesses are conforming their testimony to other people's recollections about events that happened in some cases 20 years ago, 30 years ago even. There's a second point as well. I'm sorry, Your Honor. Go ahead. I was going to say that that would never be grounds for not allowing the press to print stories that they've obtained through other investigative reporting. I mean, we would never put any kind of a gag order on their ability to publish on that ground. So to the extent that this is you've acknowledged these are judicial documents, there's the debate about how much presumption they're entitled to. But I'm not sure why one of our concerns should be that witnesses in the criminal trial might conform their testimony. But help me out. I mean, I'm willing to be persuaded. No, I appreciate it. I think the distinction between what is effectively a prior restraint of a right to publish something that was obtained through another avenue is not an issue where it's not analogous to what we're talking about here because we're talking about whether something should be released in the first instance. We're not talking about muzzling the media or something they're reporting as something they already have. So I don't think the situations are comparable in that respect. But I do think there is a concern and courts do exercise care all the time in terms of what information is released prior to trial both to protect the ability to obtain a fair and impartial jury and to protect ongoing investigations. In this case, we'll be talking about shortly, we have a criminal protective order which is in place to prevent disclosure of things to the public that might either affect the ability to obtain a fair trial or at least in the government's view impair an ongoing investigation. That's routine. And I think this is comparable to that. Particularly when the presumption of access that applies is so limited. And if I could just add one more piece to this, which the fair trial of course also depends, is also located when Ms. Maxwell has the opportunity to litigate valid issues. And one of those issues in this case is Martindale, which we've talked about briefly. But the manner in which the government obtained Ms. Maxwell's depositions is going to be an issue before Judge Nathan. And we are simply asking that the status quo be preserved to protect Ms. Maxwell's right to litigate the propriety of the government's conduct in obtaining her depositions. And if this court can look at the public briefing in the criminal case 20-3061MC, that the government conspicuously does not deny an intent to argue that if the depositions are released, no harm, no foul, because now we have the depositions through an independent source, or anything we might have done improper, is harmless, because now we have them and they've been released. And that completely undercuts potentially Ms. Maxwell's ability to make what I think is a valid argument on Martindale, because we have at least one court in the federal district of New York, what I'll call courts two, already accepting a very similar argument. So that's how I respond to your Honor's concerns. Thank you, Judge Cabranes. Thank you. Judge Poole, any other questions? I do not, thank you. All right, we'll turn now to, we will reserve decision in Jouffre versus Maxwell, number 20-2413MC.